COPY

## SECURITY AGREEMENT

THIS SECURITY AGREEMENT ("Agreement") is made and entered into this 10th day of August, 2007, by ROBIN JONES and MISHAWAKA INN, INC. (together the "Borrower"), for the benefit of MISHVESTMENTS, LLC ("Lender").

### WITNESSETH

FOR AND IN CONSIDERATION of a loan made by Lender to Borrower and other good and valuable consideration, the receipt and adequacy of which are hereby confessed and acknowledged, Borrower hereby agrees as follows:

Unless otherwise defined herein, all capitalized terms shall have the meanings given to them in that certain Loan Agreement of even date herewith.

1. <u>Definitions</u>: For purposes of this Agreement, the following terms shall have the meaning given, as further defined in the Loan Agreement:

    a. "Borrower" shall mean and refer to ROBIN JONES.

    b. "Collateral" shall mean and refer to all of the following:

        i. The Property.

        ii. All easements and rights-of-way and rights to the same belonging or in any way appertaining to the Property owned by Borrower.

        iii. All minerals and mineral rights, including oil, gas, gravel, and other minerals, lying in, on, or under the surface of the Property owned by Borrower.

        iv. All water and water rights now owned or hereafter acquired by Borrower including but not limited to all water and sewer taps owned by Borrower belonging to or in any way related to or appurtenant to the Property.

        v. All strips and gores of land lying between the Property and streets, roads, highways or alleys, open or proposed, owned by Borrower.

        vi. All estates, rights, titles, interests, privileges, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating, or pertaining to the Property owned by Borrower.



EXHIBIT A

vii. The reversion or reversions, remainder and remainders, rents, issues, and profits in any way belonging, relating, or pertaining to the Property owned by Borrower.

viii. All Improvements presently located or subsequently constructed on the Property owned by Borrower.

ix. All of Borrower's right, title and interest in and to all machinery, apparatus, furniture, fixtures, equipment and other property of every kind and nature now or hereafter located upon the Property and usable in connection with the present or future operation of the Property. Borrower shall have the right to replace any fixtures or other personal property with comparable fixtures or equipment, provided that the Deed of Trust shall extend to and represent a lien against all such replacement items.

x. All of Borrower's right, title and interest in and to all deposits, funds, accounts, performance contracts, utility supply contracts, contract rights, instruments, documents, marketing and sales brochures, general intangibles (including trademarks, trade names, and symbols used in connection therewith), and notes or chattel paper arising from or by virtue of any transaction related to the Property or the use thereof and the right to receive and apply the deposits, funds, accounts, notes, chattel paper, contract rights, instruments, documents, and general intangibles to the payment of the Loan.

xi. All of Borrower's right, title and interest in and to all permits, licenses, franchises, certificates, and other rights and privileges obtained in connection with the Property including the Hotel Restaurant Liquor License issued by Larimer County and the State of Colorado.

xii. All of Borrower's right, title and interest in and to all contracts for the sale of all or any portion of the Property now existing or hereafter acquired, and the proceeds therefrom, and all proceeds arising from or by virtue of the rental or other disposition of all or any of the Property and the right to receive and apply all of said proceeds to the payment of the Loan.

xiii. All of Borrower's right, title and interest in and to all awards or payments, including interest thereon, and the right to receive and apply the same to the payment of the Loan, which may be made with respect to the Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the

      exercise of said right) or for any other injury to or decrease in the value of the Property.

xiv. All of Borrower's right, title and interest in and to all leases, sales contracts, and other agreements affecting the sale, use, or occupancy of the Property now or hereafter entered into, and the right to receive and apply the rents, issues, and profits of the Property to the payment of the Loan.

xv. Any insurance policies required to be maintained hereunder and all proceeds of and any unearned premiums on any insurance policies required to be maintained hereunder or otherwise covering the Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof for damage to the Property to the payment of the Loan.

xvi. The right, in the name and on behalf of Borrower (but without prejudice to the right of Borrower to same), to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property.

xvii. All other interests of every kind and character which Borrower now has or at any time thereafter acquires in and to the real and personal property described herein and all property which is used or useful in connection therewith, including, but not limited to, rights of ingress or egress and all reversionary rights or interests of Borrower therein.

xviii. All contracts and agreements between Borrower, Architect, and Engineer and any other architect or engineer for the design of the Improvements relating to the Project.

xix. All other agreements and contracts between Borrower and other persons and entities pertaining to the Property.

xx. Restaurant Equipment including but not limited to all the equipment used in conjunction with the operation of the restaurant and music venue, including all music equipment (including, but not limited to, speakers, amplifiers, cabling, lighting, mixers, microphones and other musical equipment), restaurant equipment (including, but not limited to, all kitchen and food preparation equipment, tables, chairs, cash registers, phones, lighting and other restaurant equipment), barroom equipment (including, but not limited to, alcohol dispensing equipment, bars, plates, glassware,

    pots and pans, silverware, cups, pitchers and all other equipment used in conjunction with the operation of the hotel restaurant liquor license).

  xxi. Inventory (including, but not limited to, all food, beverage, alcoholic beverage and other products prepared or sold to the public), all proceeds (including all proceeds from any sales, concerts, services), and after-acquired inventory and accounts receivable, specifically including property set forth on Exhibit A attached.

c. "Lender" shall mean and refer collectively to MISHVESTMENTS, LLC, its successors and assigns.

d. "Loan" shall mean and refer to collectively the Purchase Money Loan in the original principal amount of Five Hundred Eighty Thousand and No/100 Dollars ($580,000.00) made by Lender to Borrower and evidenced by the Promissory Note.

e. "Loan Agreement" shall mean and refer to the Loan Agreement of even date herewith.

f. "Loan Documents" shall mean and refer to the Promissory Note, Deed of Trust, Assignment of Leases, Rents and Profits, Security Instruments, the Loan Agreement, and such other documents as may be required by Lender to evidence or secure the Loan.

g. "Note" or "Promissory Note" shall mean and refer to collectively the Purchase Money Loan in the original principal amount of Five Hundred Eighty Thousand and No/100 Dollars ($580,000.00) made by Lender to Borrower and evidenced by the Promissory Note payable in accordance with the terms of the Promissory Note and the Loan Agreement.

h. "Property" shall mean and refer to the real property more particularly described as

  The N 1/2 of the SE 1/4 of Section 5, Township 8 North, Range 71 West of the 6th P.M., County of Larimer, State of Colorado, except the West 1055 ft. thereof, also except that parcel conveyed to the County of Larimer as recorded November 7, 1949, in Book 882 at Page 418 of the Larimer County, Colorado records.

2. <u>Security Interest</u>. To secure payment of the Loans and performance of all of the terms, covenants, conditions, and provisions contained in the Loan Documents,

Borrower hereby grants to Lender a security interest in the Collateral and in its proceeds, products, and accessions.

3. Representations and Warranties. Borrower expressly represents and warrants to Lender that Borrower has good right, full power, and lawful authority to enter into this Agreement; is the owner of the Collateral; and has good and marketable title to the Collateral free and clear of all liens, security interests, and encumbrances.

4. Covenants of Borrower. Unless Lender consents in writing, Borrower agrees:

   a. The Collateral will be kept on the Property.

   b. Borrower will not sell, consign, or otherwise dispose of any of the Collateral or any interest therein, except in the ordinary course of business.

   c. Borrower will keep the Collateral in good condition, free of liens, security interests, and encumbrances other than the security interest created by this Agreement.

   d. Borrower will insure the Collateral against such hazards as provided in the Loan Agreement and shall name Lender as an additional named insured on such policies. Lender shall have the right to apply the proceeds of any such insurance toward payment of the Loans. Borrower shall give notice in writing to Lender of any loss or damage to the Collateral or any improvements thereon as soon as reasonably possible after such loss or damage occurs. In the event of any loss or damage to the Collateral or any improvements thereon from an insured casualty, insurance proceeds shall be applied to restoration or repair of the Collateral damaged, provided such restoration or repair is economically feasible and the security of this Agreement is not thereby impaired. If such restoration or repair is not economically feasible or if the security of this Agreement would be impaired, the insurance proceeds shall be applied to the Loans with the excess, if any, paid to Borrower. If the Collateral is abandoned by Borrower or if Borrower fails to respond to Lender within thirty (30) days after written notice from Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds, at Lender's option, either to restoration or repair of the Collateral or to the Loans. Any such application of insurance proceeds to the Loans shall not extend or postpone the due date of any installment or installments required to be made pursuant to the terms of the Loan Documents or change the amount of any such installment. If the Collateral is acquired by Lender as a result of foreclosure, all right, title, and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from damage to the Collateral prior to the acquisition of the Collateral by

Lender shall pass to Lender, to the extent of the balance due on the Loans. Borrower shall cooperate with Lender in the collection of any insurance proceeds which may be payable in the event of any loss, including the execution and delivery of any proof of loss or other action required to effect recovery.

e. Borrower will pay and discharge all taxes, liens, security interests, and any encumbrances against the Collateral and pay for the repair of any damage to the Collateral and the insurance thereon.

f. Borrower will, from time to time, upon request of Lender, execute financing statements and other documents and perform such other acts as Lender may request to perfect and maintain a valid security interest in the Collateral.

g. Borrower will allow Lender to inspect the Collateral and Borrower's books and records pertaining to the Collateral at all reasonable times, wherever located.

5. Default. The occurrence of any one of the following events shall constitute default under this Agreement:

a. Failure to make any payment on the Loans as provided in the Loan Agreement and Promissory Notes;

b. Failure to perform or observe any covenant contained in this Agreement within any applicable grace or notice periods.

c. Event of Default under any of the Loan Documents.

6. Remedies. Upon the occurrence of any event of default and at any time thereafter, Lender shall have, in addition to all other rights and remedies set forth in the Loan Documents, the remedies of a secured party under the Uniform Commercial Code as then in effect in Colorado ("UCC"), regardless of whether the UCC applies to the security transactions covered by this Agreement, including, without limitation, the right to accelerate the maturity of the Loans without notice or demand and to take possession of the Collateral and any proceeds thereof, wherever located. Borrower shall make the Collateral available to Lender at a place to be designated by Lender that is reasonably convenient for both parties. If notice is required, Lender shall give Borrower at least five (5) days' prior written notice of the time and place of any public sale of the Collateral or of the time after which any private sale or any other intended disposition of the Collateral is to be made. Insofar as the Collateral shall consist of accounts, insurance policies, instruments, chattel paper, or the like, Borrower hereby irrevocably appoints Lender its attorney-in-fact to demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize upon the Collateral as

Lender may determine, and with respect thereto, Lender shall have the right to endorse notes, checks, or other evidence of payment on behalf of and in the name of Borrower. Borrower shall pay to Lender all expenses of retaking, holding, preparing for sale, selling, or otherwise disposing of the Collateral, including reasonable attorney's fees and legal expenses, and such costs shall be paid out of the proceeds of the disposition of the Collateral.

7. <u>Nonwaiver</u>. No default shall be waived by Lender, except in writing, and no waiver of any payment or other right under this Agreement shall operate as a waiver of any other payment or right.

8. <u>Governing Law</u>. This Agreement shall be construed under and governed by the laws of the State of Colorado.

9. <u>Remedies Cumulative</u>. All of the rights of Lender under this Agreement shall be cumulative and shall not be in lieu of any other rights or remedies which Lender may have under the Loan Documents. As supplementary or additional remedies, Lender shall also be entitled, without notice or demand, to the extent permitted by law to exercise or continue to exercise all of the rights granted to Lender in Paragraph 10 hereinafter or to have a receiver appointed to take charge of all or any part of the Collateral, exercising all of the rights granted to Lender in Paragraph 10 hereinafter.

10. <u>Rights of Lender</u>. In its discretion and without notice, Lender may take any one or more of the following actions, without liability, except to account for property actually received by Lender:

   a. Discharge taxes, liens, security interests, and other claims against the Collateral.

   b. Pay for the maintenance, preservation, and protection of the Collateral, including costs and expenses incident to any action undertaken by Lender pursuant to this Agreement.

   c. Insure any of the Collateral.

   d. In its own name or in the name of Borrower, demand, sue for, collect, or receive any money or property at any time payable or receivable on account of or in exchange for any of the Collateral and, in connection therewith, endorse notes, checks, drafts, money orders, documents of title, or other evidence of payment, shipment, or storage in the name of Borrower.

   e. Make any compromise or settlement deemed advisable with respect to any of the Collateral.

   f. Take or release any Collateral as security for the Loans.

Lender shall be under no duty to exercise or to withhold the exercise of any of the rights, powers, privileges, and options expressly or implicitly granted to Lender by this Agreement and shall not be responsible for any failure to do so or to delay in doing so.

11. <u>Assignment</u>. Lender may assign, transfer, or deliver any of the Collateral to any assignee of the Loans and thereafter shall be fully discharged from all responsibility with respect to the Collateral. The assignee shall be vested with all the powers and rights of Lender hereunder with respect to the Collateral.

12. <u>Binding Effect</u>. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

13. <u>Notice</u>. Any notice required or desired to be given by the parties hereto shall be in writing and may be personally delivered; mailed, certified mail, return receipt requested; sent by telephone facsimile with a hard copy sent by regular mail; or sent by a nationally recognized receipted overnight delivery service, including, by example and not limitation, United Parcel Service, Federal Express, or Airborne Express. Any such notice shall be deemed given when personally delivered; if mailed, three (3) delivery days after deposit in the United States mail, postage prepaid; if sent by telephone facsimile, on the day sent if sent on a business day during normal business hours of the recipient or on the next business day if sent at any other time; or if sent by overnight delivery service, one (1) business day after deposit in the custody of the delivery service. The addresses for the mailing, transmitting, or delivering of notices shall be as follows:

If to Lender, to:

MISHINVESTMENTS, LLC
320 N. College Ave.
Fort Collins, CO  80524

With a copy to:

J. Brad March
March, Olive and Pharris, LLC
110 E. Oak St., Ste. 200
Fort Collins, CO  80524

If to Borrower, to:

ROBIN H. JONES
13714 Poudre Canyon
Bellvue, CO  80512

MISHAWAKA INN, INC.
Attention: Robin H. Jones
13714 Poudre Canyon
Bellvue, CO 80512

14. **WAIVER OF JURY TRIAL.** IT IS MUTUALLY AGREED BY AND BETWEEN BORROWER AND LENDER THAT THE RESPECTIVE PARTIES WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM BROUGHT BY EITHER PARTY AGAINST THE OTHER ON ANY MATTER WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS AGREEMENT, THE PROMISSORY NOTES, THE LOANS AGREEMENT, THE DEED OF TRUST AND ALL OTHER INSTRUMENTS EXECUTED IN CONNECTION THEREWITH.

IN WITNESS WHEREOF, Borrower has executed this Agreement as of the day and year first above written.

**BORROWER:**

MISHAWAKA INN, INC.

By: _____
Robin Jones, President

_____
Robin Jones

STATE OF COLORADO    )
                     ) ss.
COUNTY OF LARIMER    )

The foregoing instrument was subscribed, sworn to, and acknowledged before me this 10th day of August, 2007, by Robin Jones individually and as President of MISHAWAKA INN, INC.

Witness my hand and official seal.

My commission expires: 6-17-2011 .

_____
Notary Public

[Notary Seal: SANDY HOY HELZER, NOTARY PUBLIC, STATE OF COLORADO]

N:\WPC\JBM\SCHRADER\JONES, ROBIN\loan materails\Security agreement 7.25.doc

## EXHIBIT A
### to Security Agreement
### Robin Jones and Mishawaka Inn, Inc., Borrower
### Mishvestments, LLC, Lender

## LIST OF SPECIFIC ASSETS

1. Rights to well, permitted by the Colorado Division of Water Resources, as Permit No. 102654 used in the operation of Mishawaka (the "Business").

2. Liquor License for property identified as Mishawaka and held by Lender.

3. All inventory of the Business, on hand or subsequently acquired.

4. Specific Equipment. The following list of equipment located on the Business premises is not intended to limit the general encumbrance and pledge of all equipment used in the operation of the Business.

   a. Bar Interior Equipment: two (2) beer coolers; three (3) 3-hole reach-in/reach-down coolers; small refrigerator; hand sink; steel table.
   b. Kitchen Area: pans; dish cutlery; flat-top stove; shelving (times 3); pop dispenser; reach-ins – superior (times 2); three-hole sink; prep tables (times 2); stove; grill; fryer; microwave oven (times 2); warmer (times 2); toaster (times 2).
   c. Bar/Dance Area: beer walk-in and compressed sound system; television; five (5) tables and chairs for tables; sixteen (16) bar stools; speakers; wheel table; ice machines (times 2); ladder; mirror ball; inside lighting, including all stage lighting; speakers; decorative stoplight; computerized projector; animal mounts.
   d. Exterior: outside tables fifteen (15) or more with four (4) chairs per table; upper deck; two (2) tables; barbecue; plastic tables (times 9); stage lighting; speakers; mixer board and other materials;
   e. Outside Bar: two-hole sink; pop dispenser; beer cooler; four-hole, reach-down refrigeration unit.
   f. Outdoor Stage, including sixteen (16) spotlights.
   g. Main Cabin: stove; refrigerator; television.
   h. Second Cabin: two (2) freezers, including reach-in refrigerator; microwave; computers; cash register.
   i. Tools, including drills.
   j. Air compressor-speed air, five (5) horsepower.
   k. Greenhouse: walk-in refrigeration and freezer together with compressors and reach-in freezer.
   l. Red House: refrigerator, propane heater and stove.
   m. All computers located on the property.
   n. All cash registers located on the property.
   o. All accounting records; accounts receivable for business known as Mishawaka, including future accounts receivable.